AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
SEP 27 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No.   **19MJ4205**
One Silver iPhone Cellular Telephone )
IMEI: 355402073220203 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1028, 1028A, & 1343 | Fraud and related activity in connection with identification documents or authentication features, aggravated identity theft, and wire fraud |

The application is based on these facts:
See Affidavit of U.S. Secret Service Special Agent Phillip Roberts, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Phillip Roberts, U.S. Secret Service
*Printed name and title*

Sworn to before me and signed in my presence.

9/27/2019

*Judge's signature*

State: San Diego, CA            Hon. F.A. Gossett, III, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Phillip Roberts, being duly sworn, state as follows:

## INTRODUCTION

### A. Training And Experience

1. I am a Special Agent of the United States Secret Service (USSS) and am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am duly appointed and have been acting in that capacity since April 2018. As a federal agent, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

2. I am a graduate of the Federal Law Enforcement Training Center and have received over 200 hours of specialized training in fraud, forgery, counterfeit detection and identity theft.

3. As a Special Agent, I have participated in investigations involving bank fraud, counterfeiting, the fraudulent use of checks and credit cards, the manufacture or use of stolen or fraudulent personal identification cards, identity theft, and related crimes. In these investigations, I have employed and supervised a wide variety of investigative techniques, including consensually-monitored recordings, physical surveillance, financial analysis, subject and witness interviews, grand jury subpoenas, and search and arrest warrants. I also regularly consult with fellow USSS agents and other state and local law enforcement officers as part of my duties.

### B. Purpose Of This Affidavit

4. I make this affidavit in support of an application for a search warrant for a silver in color iPhone (the **Target Phone**) seized during a search incident to arrest of Joseph Exzabian DUNBAR during his arrest on September 20, 2019, for violations of Title 18, United States Code, Section 1028, and wire fraud, in violation of Title 18,

1

United States Code, Section 1343. The **Target Phone** is further described in Attachment A.

5. Based on the information below, I submit that there is probable cause to believe that the **Target Phone** will contain evidence of federal crimes, including fraud and related activity in connection with identification documents or authentication features (18 U.S.C. § 1028), aggravated identity theft (18 U.S.C. § 1028A), and wire fraud (18 U.S.C. § 1343).

6. All of the conclusions and beliefs set forth in this affidavit are based on my training and experience, conversations with other agents who have extensive experience in fraud and identity theft investigations, and my knowledge of the facts of this investigation. All of the dates, times, and amounts listed in this affidavit are approximate. This affidavit sets forth only the facts necessary to support the issuance of the requested search warrant; it does not include each and every fact known to me concerning this investigation.

## **PROBABLE CAUSE**

7. On July 19, 2019, three subjects, including one individual later identified as DUNBAR entered San Diego Chrysler Dodge Jeep Ram at 777 Camino Del Rio South (the Dealership) in order to purchase a 2019 Dodge Challenger valued at approximately $55,000 (the vehicle).

8. In connection with a credit application submitted for the purpose of financing the vehicle, DUNBAR presented a driver's license bearing his picture and the name K.J. On the credit application, DUNBAR gave purported identifiers for K.J., including a social security number and a birth date. DUNBAR also gave an address and signed the credit application as K.J. (The other two subjects, Prentiss Lee WILLIAMS and Mitchell Allen EASLEY, also submitted credit applications and presented false identification documents in the names of M.K. and A.M. respectively. WILLIAMS and EASLEY have been charged separately.)

2

9. On July 19, 2019, the Dealership ran credit checks in the name of K.J. (and M.K. and A.M.) through an automated system connected to agencies outside the state of California. Because K.J. did not have sufficient credit, the vehicle was not financed in K.J.'s name. Instead, the vehicle was co-purchased by the men who presented themselves as M.K. and A.M. The vehicle was released to the men. (WILLIAMS returned to the dealership the next day and also purchased a 2019 Dodge Durango in the name of M.K.)

10. A few days later, the real M.K. contacted the dealership from Michigan and informed the dealership that he had not purchased any vehicles from them. The dealership reviewed the transactions and determined that the vehicles may have been fraudulently purchased and contacted the Regional Auto Theft Taskforce (RATT). San Diego County Sheriff Deputy Zachary Harris and I responded to the dealership and reviewed the information. We determined that the transactions were fraudulent, and the vehicles were placed into the National Crime Information Center (NCIC) as stolen.

11. As part of our investigation into the transactions, I used open source databases to identify individuals associated with the address provided by "K.J." on the credit application. DUNBAR was identified as being associated with the address. I queried DUNBAR's driver's license, and identified DUNBAR as the same person that appears on the K.J. driver's license.

12. On July 30, 2019, law enforcement located and conducted a traffic stop on the Dodge Durango and found two males inside the car, WILLIAMS and EASLEY. Both men were placed under arrest and charged for their role in purchasing the vehicles.

13. On September 20, 2019, an arrest warrant was issued for DUNBAR in connection with his role in the fraud on the Dealership. DUNBAR was arrested the same day, and the **Target Device** was seized from his person.

14. In my experience, co-conspirators to fraudulent activities often coordinate their criminal activities using their cell phones. Further, in my experience, people –

3

such as DUNBAR – who appear to be in the business of buying personally identifiable information (PII) and fake identities buy them over the internet, oftentimes from their phones. Third, based on prior experience, I would expect to find commercial transactions on the **Target Phone** reflecting criminal activity, such as negotiations with prospective sellers of PII, communications with victims of PII, wire fraud and theft, and bank activity following up on the criminal activity. Also, criminals involved in this sort of activity often maintain others' PII on their phones. Fifth, in my experience, I would expect to find communications on the **Target Phone** concerning the Dealership, communications with individuals at the Dealership, and potentially communications with and concerning other dealerships. Finally, the **Target Phone** may contain geolocation information putting DUNBAR at the Dealership, and potentially other dealerships or other victim locations.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using

4

forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## **CONCLUSION**

18. Based on the foregoing, I submit that there is probable cause to believe that DUNBAR engaged in a scheme involving wire fraud and fraud related to identification documents.

//
//
//
//
//

5

19. Based on my training and experience, and based on the facts set forth above, I believe that the evidence listed in Attachment B will be found on the **Target Phone** as described in Attachment A.

Respectfully submitted,

Phillip Roberts
Special Agent, U.S. Secret Service

Subscribed and sworn to before me on ___9/27___, 2019

HONORABLE F.A. GOSSETT, III
United States Magistrate Judge

6

## **ATTACHMENT A**

The **Target Phone**, IMEI: 355402073220203, is a silver in color iPhone, shown in the photo below:



The **Target Phone** is currently in the custody of the United States Secret Service San Diego Field Office.

1

# ATTACHMENT B

Law enforcement shall be authorized to search for and seize the following:

a. Communications, records, or data including but not limited to emails, text messages, voice messages, photographs, audio files, videos, or location data dated **from May 1, 2019 to September 20, 2019**:

   i. Tending to identify any co-conspirators, criminal associates, or others involved in fraud related to identification documents, identity theft, and/or wire fraud;

   ii. Tending to identify victims of fraud related to identification documents, identity fraud, and/or wire fraud;

   iii. Tending to identify the source or destination of the proceeds unlawfully taken from victims, or financial accounts or social security numbers used to transfer or hold those proceeds;

   iv. Tending to identify the user of, or persons with control over or access to, the **Target Telephone**, or to authenticate or identify any person associated with any of the records identified in any of the preceding paragraphs;

   v. Tending to identify other facilities, storage devices, or services—such as social media addresses, email addresses, IP addresses, phone numbers—that may contain additional electronic evidence described in any of the preceding paragraphs; and

   vi. Tending to identify the location of the **Target Phone**.

which constitute evidence of fraud and related activity in connection with identification documents or authentication features (18 U.S.C. § 1028), aggravated identity theft (18 U.S.C. § 1028A), and wire fraud (18 U.S.C. § 1343).